IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA FRAZIER<br><br>                    Plaintiff,<br><br>          v.<br><br>VAIL RESORTS, INC.<br><br>                    Defendant. | Civil Action No.<br><br>COMPLAINT FOR INJUNCTION |

**COMPLAINT FOR PERMANENT INJUNCTION**
**REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF**
**DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Lisa Frazier ("Plaintiff") seeks a permanent injunction requiring a change in Vail Resorts, Inc.'s ("Defendant" or "Vail Resorts") corporate polices to cause Vail Resorts' websites to become, and remain, accessible to individuals with visual disabilities. In support thereof, Plaintiff respectfully asserts as follows:

**INTRODUCTION**

1.        "Being unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ., Labor & Pensions, at 3 (May 14, 2013), *available at* https://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf (last accessed July 28, 2017).

2.        Defendant Vail Resorts is a premier mountain resort company and a leader in luxury, destination based travel.

3.      Vail Resorts owns, operates, and controls various websites, including but not limited to www.vail.com, www.aftonalps.com, www.beavercreek.com, www.whistlerblackcomb.com, www.breckenridge.com, www.keystoneresort.com, www.parkcitymountain.com, www.skiheavenly.com, www.northstarcalifornia.com, www.kirkwood.com, www.snow.com, www.mtbrighton.com, www.epicpass.com, www.epicmix.com, and www.tv8vail.com (collectively, "Websites").

4.      Consumers may use these Websites to learn more about a particular resort location, including lodging options, vacation deals, air travel, and child care available on site. Consumers can also use the Websites to "book online and ahead of time to find the best" rentals, deals, and vacation packages available. Consumers can purchase season passes and lift and other tickets on the Websites, as well as create individual accounts, sign up for Email Alerts, and connect with Vail Resorts on social media.

5.      Unfortunately, Vail Resorts denies approximately 7 million[1] Americans who are visually impaired access to its Websites' goods, content, and services because the Websites are largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

6.      Screen reader programs convert a website's text, buttons, links, and text fields to audio. Without screen reader programs, blind or visually impaired individuals cannot independently access the Internet, where everyday activities such as shopping, banking, education, and meal delivery have become commonplace.

---

[1] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed May 28, 2017).

7.      Plaintiff brings this civil rights action against Vail Resorts to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

8.      By failing to make its Websites available in a manner compatible with computer screen reader programs, Vail Resorts, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

9.      Because Vail Resorts' Websites have never been accessible and because Vail Resorts does not have, and has never had, an adequate corporate policy that is reasonably calculated to cause its Websites to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

    a)  that Vail Resorts retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of its Websites so they comply with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");[2]

---

[2]The Department of Justice has utilized the WCAG 2.0 Standards as a benchmark for satisfying the requirements of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(iii). The WCAG 2.0 Guidelines provide "recognized voluntary international guidelines for Web accessibility," *see, e.g.*, Department Commentaries, 75 Fed. Reg. at 43465, and the

b) that Vail Resorts work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c) that Vail Resorts work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Vail Resorts' Websites continue to comply with WCAG 2.0 AA on an ongoing basis;

d) that Vail Resorts work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Vail Resorts' Websites continue to comply with WCAG 2.0 AA on an ongoing basis; and

e) that Vail Resorts work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Websites, along with an e-mail address and toll free phone number to report accessibility-related problems.

10.    Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

11.    The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

---

Department of Justice, through myriad enforcement actions, has consistently used the WCAG 2.0 Level AA Standards to ensure the full and equal enjoyment of websites for persons with disabilities.

12.     Vail Resorts purposefully targets and otherwise solicits business from Pennsylvania residents through its Websites. Because of this targeting, it is not unusual for Vail Resorts to conduct business with Pennsylvania residents. In fact, the opposite is true: Vail Resorts clearly does business over the Internet with Pennsylvania residents, having entered into contracts with Pennsylvania residents that involve the knowing and repeated transmission of computer files over the Internet.

13.     Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff Frazier's claims occurred.

## PARTIES

14.     Plaintiff Frazier is and, at all times relevant hereto, has been a resident of Pennsylvania. Plaintiff Frazier is and at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

15.     Vail Resorts is a Delaware corporation with its principal place of business located at 390 Interlocken Crescent, Broomfield, Colorado 80021. Vail Resorts' Websites are a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO ALL CLAIMS

16.     While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals

with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

17.     Individuals with vision related disabilities may access websites using screen reader programs that convert text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet. Unless websites are designed to be read by screen reader software, individuals suffering visual impairments are unable to fully access websites and the content and services they make available.

**I.     Vail Resorts' Online Content**

18.     Vail Resorts' Websites allow consumers to learn more about a particular resort location, including lodging options, vacation deals, air travel, and child care available on site. Consumers can also use the Websites to "book online and ahead of time to find the best" rentals, deals, and vacation packages available.

19.     Consumers can purchase season passes and lift and other tickets on the Websites, as well as create individual accounts, sign up for Email Alerts, and connect with Vail Resorts on social media, using sites such as Facebook, Instagram, Twitter, and YouTube.

20.     The Websites also include important information like Terms and Conditions and a Privacy Policy.

**II.     Harm to Plaintiff**

21.     Plaintiff Frazier has attempted to use Vail Resorts' Websites from Allegheny County, Pennsylvania. Unfortunately, because of Vail Resorts' failure to build its Websites in a matter that is compatible with screen reader programs, she is unable to understand, and thus is denied the benefit of, much of the content and services she wishes to access or use.

22.     As a result of the accessibility barriers Ms. Frazier encountered on the Websites, she is unable to research the resort locations, or their vacation packages, online deals, season passes and tickets with the same ease as can users who do not similarly rely on screen reader software to access online content. The difficulty Ms. Frazier experiences in accessing the Websites deters her from visiting Vail Resorts' brick-and-mortar locations in the future.

23.     As a result of visiting Vail Resorts' Websites and from investigations performed on her behalf, Plaintiff is aware the Websites include at least the following barriers blocking their use by consumers with visual disabilities:

(a)     A text equivalent for every non-text element is not provided;

(b)     Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

(c)     If the content enforces a time limit, the user is not always able to extend, adjust or disable it unless the time limit is part of a real time activity or would invalidate the activity;

(d)     A mechanism is not always available to bypass blocks of content that are repeated on multiple web pages;

(e)     Web pages lack titles that describe their topic or purpose;

(f)     The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

(g)     Changing the setting of any user interface component may automatically cause a change of context unless the user has been informed before using the component;

(h)     Labels or instructions are not always provided when content requires user input;

7

(i)     In content implemented using markup languages, elements do not always have complete start and end tags, are nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(j)     The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

24.     These barriers, and others, have denied Plaintiff full and equal access to all of the services the Websites offer, and now deter her from attempting to use the Websites or visiting Defendant's resort locations. Still, Plaintiff would like to, and intends to, attempt to access Vail Resorts' Websites in the future to research the vacation packages these Websites offer, or test the Websites for compliance.

25.     If the Websites were accessible, *i.e.* if Vail Resorts removed the access barriers described above, Plaintiff could independently shop for and research the services, packages, and information available on Vail Resorts' Websites.

26.     Though Vail Resorts has centralized policies regarding the maintenance and operation of its Websites, Vail Resorts has never had a plan or policy that is reasonably calculated to make its Websites fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

27.     The law requires that Vail Resorts reasonably accommodate Plaintiffs' disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

28.     Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of websites comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). *Available at* https://www.w3.org/ (last visited July 28, 2017)

29.     Plaintiff has been, and in the absence of an injunction will continue to be, injured by Vail Resorts' failure to provide its online content and services in a manner that is compatible with screen reader technology.

**III.     Vail Resorts' Knowledge of Website Accessibility Requirements**

30.     Vail Resorts has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

31.     Indeed, the Disability Rights Section of the DOJ reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts that it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

**IV.     The Parties have No Administrative Remedies to Pursue.**

32.     There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

33.     While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

34.     Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

35.     Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether Vail Resorts offers content and services on its Websites, and (b) whether Plaintiff can access the content and services.

<u>**SUBSTANTIVE VIOLATION**</u>
<u>**(Title III of the ADA, 42 U.S.C. § 12181 *et seq*.)**</u>

36.     The assertions contained in the previous paragraphs are incorporated by reference.

37.     Vail Resorts' Websites are a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

38.     In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Vail Resorts does not provide Plaintiffs with full and equal access to its Websites, it has violated the ADA.

39.     In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or

otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. Id.; see also MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

40.     Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

41.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions. 28 C.F.R. §§ 36.303(b)(2), (4).

42.     In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability. 28 C.F.R. §§ 36.303(c)(1)(ii). To this end, the Ninth Circuit has explained, "assistive technology is not frozen in time: as technology advances, [ ] accommodations should advance as well." *Enyart v. Nat'l Conference of Bar Examiners, Inc.*, 630 F.3d 1153, 1163 (9th Cir. 2011).

43.     By failing to provide its Websites' content and services in a manner that is compatible with auxiliary aids, Vail Resorts has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

11

(a)     denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on Vail Resorts' Websites;

(b)     affording individuals with visual disabilities access to Vail Resorts' Websites that is not equal to, or effective as, that afforded others;

(c)     utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d)     denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e)     failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

44.     Vail Resorts has violated Title III by, without limitation, failing to make its Websites' services accessible by screen reader programs, thereby denying individuals with visual disabilities the benefits of those Websites, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

45.     Vail Resorts has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Websites to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

46.     Making its online goods, content, and services compatible with screen reader programs does not change the content of Vail Resorts' Websites or result in making the Websites

different, but rather enables individuals with visual disabilities to access the Websites Vail Resorts already provides. See MIT Statement of Interest, p. 20; Harvard Statement of Interest, p. 20.

47.     Vail Resorts' ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and other individuals with visual disabilities.

48.     Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

49.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for:

1.     A Declaratory Judgment that at the commencement of this action Vail Resorts, Inc. was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Vail Resorts, Inc. took no action that was reasonably calculated to ensure that its Websites are fully accessible to, and independently usable by, individuals with visual disabilities;

2.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Vail Resorts, Inc. to take all steps necessary to bring its Websites into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Websites are fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Vail Resorts, Inc. has adopted and is following an institutional policy that will in fact cause Vail

Resorts, Inc. to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiffs is described more fully in paragraph 9 above.

3.      Payment of costs of suit;

4.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

5.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: July 31, 2017                              Respectfully Submitted,


                                                  */s/ Benjamin J. Sweet*
                                                  Benjamin J. Sweet (PA Bar No. 87338)
                                                  bsweet@carlsonlynch.com
                                                  Kevin W. Tucker (PA Bar No. 312144)
                                                  ktucker@carlsonlynch.com

                                                  **CARLSON LYNCH SWEET KILPELA**
                                                  **& CARPENTER, LLP**
                                                  1133 Penn Avenue, 5th Floor
                                                  Pittsburgh, PA 15222
                                                  Phone: (412) 322.9243

                                                  *Counsel for Plaintiff, Lisa Frazier*